Good morning. Good morning. And before we start, thank you, Mr. Lincoln, for your service in this case. We appreciate it. Thank you to the students as well. Go ahead when you're ready. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Kaylana Mueller-Shaw appearing alongside Isaiah Paik on behalf of petitioner J. E. F. V. who is watching from ICE detention in California City. I'd like to reserve five minutes for rebuttal. Your Honors, the stakes here are simple. And Mr. Paik is going to take the rebuttal? Is that how you decided to split the time? That's correct, Your Honor. Your Honors, the stakes here are simple. The petitioner comes before this Court after the Board denied reopening of his cap proceedings, despite two experts concluding that he is nearly certain to face torture and death if deported to El Salvador. But where the stakes are simple, this case is procedurally complex, and I'd first like to take a moment to explain exactly what the petitioner is asking for today and the steps to get there. There are two main pathways for this Court to resolve the case in favor of the petitioner, and this Court has jurisdiction over both of them. The first path would be vacating the underlying final administrative removal order in order to remedy DHS's errors in issuing it. This Court has jurisdiction over challenges to final removal orders pursuant to 8 U.S.C. § 1252 combined with 28 U.S.C. § 1653, which permits amendment to petitions for review. Here, DHS violated its own rules and the law in issuing the petitioner's final removal order, and this Court can reach all the way down to the final removal order and vacate it, requiring the DHS to restart proceedings properly. In the alternative, the second path is reopening the petitioner's CAT case via Navarrete. Here, these same DHS violations that I just mentioned are at minimum colorable claims that provide this Court with pendent jurisdiction over the petitioner's underlying CAT claims and allowing that this Court instruct that the case be reopened. Both these paths, whether vacating the FARO or reopening the CAT case, require challenging the removal order, and so I'll turn now to what those challenges are here. Obviously, this was raised for the first time in your supplemental brief, but the government, we haven't heard from them yet on these points, on whether the final order of removal of the FARO is infirm or also whether it's the challenges you raised are colorable. That's correct, Your Honor. They've had the last two weeks prepare any potential challenges that they may have, but we believe at minimum these are colorable claims. What does it mean to be colorable in this context? Because I understood the arguments here to be essentially procedural relating to the FARO, but is there any colorable argument that your client is not removable? Your Honor... Just as a substantive matter? For that, he committed an aggravated felony, and so is he not removable? We're not bringing any challenges to the underlying convictions or to his status as a non-citizen. However, the regulations here do require an invalidation of the final removal order procedurally, and this Court has held in Riavaca that where there are agency violations and the underlying regulation protects fundamental due process, that those violations should invalidate the FARO. And the reason for that, as I believe the Montez Lopez Court explained, is to bind the government to its own rules as opposed to just allowing them to violate regulations without requiring an invalidation of the removal order. But so then what, if you're right on this, what would then happen? This would go back, the procedures would need to be complied with, but nonetheless, in all likelihood, a FARO would be entered and we would be back here again? That's correct, Your Honor. The DHS could restart removal proceedings. He would have another reasonable fear interview and then restart CAT proceedings and would be able to bring the same new evidence and competent counsel that he is asking for with reopening of the CAT case. Can you clarify your position on how Navarrete impacts this case? Because there was no original challenge to the FARO in a timely fashion, right? So would you have to be allowed to amend to add that challenge in order to get around Navarrete? Yes, Your Honor. As Navarrete contemplates, there can be amendment to bring a colorable challenge. And so here, we've briefed those issues in our supplemental brief, but we'd also be happy to file an additional motion to bring those claims officially to amend. And then as Navarrete contemplates, once you have amendment, and here, I'm not sure this occurred to Navarrete, but the government has waived any concerns as regards to timeliness to challenges to the final removal order. They did so in their answering brief and in their supplemental brief. And so I don't believe there's a timeliness issue here. With regards to whether the petitioner may have brought these claims earlier, he didn't know until a month ago that he needed to have these claims in order to secure jurisdiction over his underlying CAT claims, which is the relief he sought this whole time. And so we ask that this court wouldn't hold against him the fact that he didn't bring them when he did not know that they were necessary to have jurisdiction. And that was because the Navarrete decision came out a month ago, correct? That's correct, Your Honor. So there will be no waiver or forfeiture concerns because of the changing case law? No, Your Honor. We believe because the Navarrete court was clear in contemplating it that there's not a waiver or forfeiture concern here, and in particular because the government has waived the timeliness of any potential final removal order challenges. Did your client have any obligation to challenge the FARO before it got to this court, either in front of this administrative officer or the IJ? No, Your Honor. I think he could have brought challenges earlier, but it was permissive, not obligatory, that he brought them. And strategically for him, if he had brought challenges to the final removal order earlier, it would have just restarted the process, restarted his CAT proceedings. And since he has been seeking CAT relief this whole time, that wouldn't have been very helpful. So I believe this was likely why they were not brought earlier. There's a footnote in Navarrete, footnote five, that references the fact that the petitioner there had been advised he could contest the FARO and didn't. Does that have any relevance here? I don't think so, Your Honor. It's a little unclear from the footnote, but it seems that Navarrete made some affirmative decision not to contest, whereas here the petitioner, in his notice of intent to issue the FARO, marked the box to contest and or request withholding of removal. He affirmatively did not waive any opportunity to contest. And then given that one of the violations of the underlying order is that DHS did not wait the required 10 days between issuing the notice of intent to serve the FARO and then issuing the FARO itself, the petitioner did not even have an opportunity to contest the underlying charges. The FARO itself was issued less than three hours after the notice was served. Does it matter that on the form there's a box that says, I contest my deportability, and he didn't check that? I don't think so, Your Honor. I think that there's still no affirmative opportunity for him to contest. He was not given the time. And this court in Gomez, Alaska also held that a petitioner can, within the 10-day period after issuing the notice of intent, can still contest removability, even if they had checked the box that they did not wish to contest. So this is meant to give non-citizens a proper due process opportunity to consider the underlying evidence, whether they would like to contest, whether they'd like additional time. None of that was respected here, and the petitioner also did not check any box that he was not contesting his charges. Just to make sure I understand, your position is, yeah, he didn't check the box, but the reason he didn't is wrapped up in some of these claim procedural violations? That's correct, Your Honor. That's correct. If there are additional jurisdictional questions, I'm happy to answer them. I was hoping to speak a couple minutes to the merits of the case as well. You know, this court does not ultimately need to agree that the petitioner wins on the FARO challenges. It just needs to find that they're colorable in order to get that pendant jurisdiction and then to reach the underlying claims. And I guess to start with, change country conditions, here the board erred numerously in denying based on change country conditions, but in particular erred in misapplying this court's law with regards to changes that are personal. The petitioner included evidence that his uncle, who was a high-ranking MS-13 member, had issued what's called a green light order, which authorizes any MS-13 member to kill the petitioner on sight, and the board— The uncle was in El Salvador at the time, so he was out of the country, correct? That's correct. He was in the country of origin. And the petitioner said that this was a personal change that doesn't qualify as a change country condition. However, this court's law under Core and Reyes-Corrado says that when there is new evidence demonstrating a change in the country of origin, when it's not self-induced by the petitioner and it weighs on the petitioner's fear of torture, that that properly qualifies as a change in country conditions. And so here, too, we believe that the green light order is properly considered as a change. In addition, just to touch very briefly in the last couple of seconds, there was also a basis for reopening based on ineffective assistance of counsel, and here the petitioner found him—or the board found the petitioner not diligent in discovering IAC. This was an abuse of discretion, and in particular, the board got the law wrong in ending tolling in June as opposed to in October when he conclusively learned of ineffective assistance of counsel. And so I see that I'm at my time, but for the foregoing reasons, we ask this court to confirm its jurisdiction and instruct reopening of the Catt case. Thank you. Thank you, Michelle. Thank you. May it please the court, Matthew George for the Attorney General. Navarrete makes clear that the court does not have jurisdiction over the petition for review here. Although Petitioner now tries to bring new challenges to the pharaoh for the first time, remember this is not the first petition for review that Petitioner filed. He could have brought these challenges in his first petition for review, which was filed before Riley even came out. He could have raised all of these issues without any issues about timeliness, about whether this is a final order, any of the concerns that now exist and that Navarrete has made clear and shows why this petition for review, the court lacks jurisdiction. Even if, well. Let me just pause there. I mean, I guess the petitioner, though, says, well, I didn't know I needed to do that to have review of my Catt claim pre-Navarrete. Right. And Navarrete says equitable concerns, such as maybe not knowing what the law was, are not something that plays into jurisdictional issues. And this is a jurisdictional issue, and the court has now told us this is not a final order of removal, and that's what the court needs to. Right. Well, I mean, I don't know that it's a jurisdictional issue as to whether the petitioner should be permitted to amend the petition to challenge these things. Do you think it is? It's not necessarily a jurisdictional issue. Then there are issues about whether he's going to raise colorable issues, and the issues that he's pointed out in his supplemental brief are not colorable because I think, as Your Honor has already pointed out, they're procedural challenges. There's no issue here about substantive things, about whether a petitioner is actually removable. These are procedural things. First, he hasn't shown any prejudice, and Gomez-Velasco really is the case that says he does need to show prejudice in this instance. It's also issues that are just purely speculative about, oh, maybe I would have been able to apply for adjustment. And an issue with that remains is he would even still be eligible to adjust, given that he does have an aggravated felony conviction, regardless of whether that ferro is in place or not. Some of this also is the problem of raising these issues at sort of the proverbial eleventh hour. I mean, these are things he could have brought in the petition for review if he wanted to. Now, I think we've heard that he's not really challenging the ferro. He wants review of the withholding-only proceedings. Right. And a couple months ago, he could have come here and done just what he's doing, right? Right. The law has changed. Right. I take issue with the other side saying that the government hasn't responded to theirs. I don't think there's been an opportunity for the government to respond to what they put in the supplemental brief. But at the same time, as Your Honor is pointing out, they could have filed a motion to amend, and we maybe could have had an opportunity to litigate these issues. But I will point out, though, the waiver that we made about timeliness in our answering brief, that was made sort of in the procedural posture that the case was in at that time. We may need to reevaluate that given the development since then, certainly with the legal changes that have occurred since then. And we may need to withdraw that waiver if now petitioner is going to challenge the ferro itself. It was clear up until, I guess, the supplemental brief, maybe the reply brief, that he had no challenge to the ferro. And so we made that waiver of timeliness sort of in that posture, in the legal standing at that time. Even though Riley had come out at that time, we were waiving for petitions filed before Riley, given that that was something no one could have asked. That sounds like yet another issue that I'm sure the parties will have some different views on.  So it's not as simple as, I think, even just filing a motion to amend or something like that, given the changes. And given Averitt makes it clear that there's no jurisdiction here, and this is sort of just a procedural challenge. And it's not a substantive challenge. I don't know what difference it would make if we go back and now we have to start this entire process over again for now potentially a third petition for review after petitioner has already had full review of everything. His entire sort of on the merits case was had in the first petition for review. He made all these arguments about potential torture in El Salvador. And the court considered it and denied that petition. And now we're here again in a motion to reopen context. And now it's at the 11th hour. Is the Green Light Order not a changed country condition? Well, the board said it was a change in personal circumstance. It's not a change because it existed before the February 2024 hearing. As the record shows, it was in place several years before that. Now, petitioner may not have known of it. Did the petitioner know that? I mean, this wasn't the basis for the board's decision. No, that's in the record. I mean, that's one issue or one factional matter in the record that it existed before that. Now, he may not have known about it, but he never made the argument that it wasn't previously available because I had no way to discover it or something like that. I mean, that may be, but it seems that we have, if we can even get to it, there's a BIA decision that says this Green Light Order is just a change in personal circumstances. Does the government support that? That is what the board said. Also, as I pointed out, I believe in a footnote in the answering brief, the board also considered things broader in sort of just a materiality way, and they cited to the portion of the motion to reopen that was discussing the Green Light Order. So they did sort of encompass that in a larger context of materiality because he's already a Mexican gang member going back to El Salvador where there's plenty of evidence that the Salvadoran gangs want to kill Mexican gang members. And so now there's an additional reason why they want to kill him. That doesn't materially change the risk that he was facing before. So in addition to it wasn't, it's not new, it's also not material, and that's really getting more into what. I mean, the IJ in the original decision is speaking of how, you know, there's no evidence that he's specifically targeted or something like that, and he argues, well, now I have that evidence. I mean, it's all whether it's material. I mean, what is the material increase in risk to him from this Green Light Order? So we have a lot of evidence about what a Green Light Order is, but there's no evidence of what is the increase in risk based on that. We don't have any. Did the board pass on this? In other words, did the board make this point that you're making, that essentially a Green Light Order is just, you know, a tiny additional risk on top of the existing risk? Well, that's what they're getting into with the materiality and whether it's a change generally. They didn't drill down into this precise argument that I'm making, no. But regardless, that evidence is in the record, and that's something that's going to, I mean, whether you're on non-marriage or sort of a prejudice type of context, I mean, that's the record. So, I mean, we're going to send it back for the board. I mean, assuming there's jurisdiction to even review this, is the court going to send it back when this issue is there, whether the board articulated it well or not? This is what's in the record. Did the board consider the fact that the Ninth Circuit precedent reflects that this is a changed country condition as opposed to personal circumstances? Was that addressed? It didn't consider it precisely in that context. It was considered it generally when it cited the motion to reopen generally. So it didn't use those specific words. Its general decision was about personal circumstances. However, at the same time, the court shouldn't read this decision like it's reading a statute, like it's parsing each individual word, and we need to sort of look behind that and look broader in the same way we'd look at, say, a district court decision and not say. We don't do that, but it seems to me that the materiality argument that you're advancing today is pretty distinct and separate from the ground that the agency relied on, which is this is a personal circumstance, which is contrary to our case law. Now, had there been some indications that they did consider it more broadly and really engaged and tackled with the materiality questions, I think it would be a different record. Well, yes. I'm not trying to say that they addressed this specifically, but at the same time, the court's reviewing the entire record in this case like it is in every immigration case. And so if something is there in the record that supports this decision, that's something the court should at least take a look at and consider. It shouldn't send this back. I mean, this isn't, as the court has said, some sort of ping-pong game where we just mindlessly send these things back and forth for no real reason. That's something that the court should consider, what is going to be the decision at the end of the day. If there's something that supports the issue of it's not a changed circumstance, it's not material, what really is the effect of just sending this back for the board to write a better decision and incorporate that issue? That's something the court should consider. Yes, the board didn't say that explicitly, but that's something still that the court should look at, assuming jurisdiction in this case. I think that's really what the court needs to evaluate first is just this jurisdictional issue, which Navarrete says it's not. And that's because the board's first decision sort of on the merits, Riley tells us clearly that's not a final order of removal, and therefore this decision on a motion to reopen cannot be a final order of removal that the court would have jurisdiction to review. Separate and apart from Navarrete, is it your position that the petitioner had an obligation to raise a challenge to DeFaro in the administrative process here at some point? No. I mean, I guess my best answer maybe is it depends. The issue is he had an obligation if he wanted to make a substantive challenge. I think that's really where I think Your Honor was getting at before with what box on the form is he checking, where he only checked the withholding and CAT boxes on the form. Right, does that matter? Sort of yes and no. I think Navarrete really looked at that in particular. I believe the petitioner in Navarrete checked the box, I'm not making any challenges. And so that would weigh a lot more towards not making any challenges at all no matter what. Here he did check the box of I want to make a challenge, and then he checked the box of I want to challenge the withholding and CAT. So it's not quite exactly on all fours with Navarrete in terms of what he's challenging. Now, that gets into the more he's making procedural type of challenges and really what's the difference going to be at the end of the day, given that he needs to show prejudice and this is just going to go back so we can give him and wait ten days and then we just do this whole process again. I mean, there's really no prejudice here, and Gomez-Velasco is this exact context almost, not precisely on all fours, but very close in terms of saying that prejudice is needed and that petitioner failed to show prejudice, just like here. This is sort of a post-talk rationalization of like, oh no, we just realized we really need to challenge this FARA. Let's come up with something and throw it in the supplemental brief at the very last minute, just because it's, I mean. Well, in fairness, there's a shifting legal landscape here, so there's no opportunity to really fully brief it. Should they get an opportunity to fully brief it, assuming you're correct that a showing of prejudice is required? Well, our position is that it's too late now to raise it. I mean, we've already briefed this twice. We filed substantive briefing and then we filed supplemental briefing, and now we're going to sort of do this a third time. The Navarrete makes it clear that there's no jurisdiction. At best, I mean, they could try to amend the petition for review, and we would oppose that, but there's also going to be a timeliness issue because we will likely withdraw any waiver of timeliness. Can I ask you, on the scope of Navarrete, does the government understand that decision to extend beyond the context of either a FARO or a reinstated removal order into, you know, the mine run of cases that we see here where somebody, in the course of their removal proceedings, seeks withholding only relief, CAT or CAT deferral, and then it comes here? Because we have plenty of those cases, and do you regard those as different than cases that originate from a reinstated removal order or a FARO? I want to make sure I understand what context you're asking about. In terms of the jurisdiction. Are you talking about, say, 240 or 1229A? 1229A. No, it would not extend to that because those are different. If there is something there in a motion to reopen, the removal order would be implicated. Even for withholding only relief? Yes, Your Honor. Okay, and why is that? That's because of just the nature of the proceedings, because when that essentially just is tied up, even when someone doesn't challenge that, it's kind of an all-in-one process, I guess is sort of the best way to describe it, whereas here it's a two-step process. There's the FARO, the reinstatement, and then separately there's these withholding only proceedings that are before really a different agency, and that's sort of the key difference, whereas in traditional immigration proceedings, the 240 or 1229A proceedings, it's all one proceeding. Okay. And so I can't say for sure what arguments we would make. I don't anticipate us saying that NAVRIT would apply to traditional removal proceedings or traditional motion to reopen proceedings. It would have to be these administrative, the FARO, reinstatement, expedited removal perhaps. That's the context where it would apply. And for those reasons, yeah, the Court should dismiss this petition for lack of jurisdiction. Thank you, Counsel. Thank you. Thank you. Your Honors, may it please the Court. Isaiah Paik on behalf of Petitioner. This Court has jurisdiction over our case because Section 1252, Riley, Navarrete, and the government all agree that this Court can review a final order of removal. Our client has raised colorable challenges to his final order of removal. And as Navarrete tells us, this Court therefore has jurisdiction over both those challenges and the BIA's denial of reopening. I'd like to start by talking about these challenges, which are absolutely colorable. Navarrete tells us colorable just means having some possible validity. And noteworthy, the government had 15 minutes just now to respond to these challenges which we raised, and nowhere do they raise a substantive concern. They do not justify it. I mean, they do say it doesn't matter, right? I mean, I do wonder about that. I mean, if you're right about this, it goes back. Your client will remain in detention during all of these proceedings. So to what end is this challenge to the FARO? Certainly, Your Honor. A few things. First, we would push back on this idea that it doesn't matter. As Judge Tunheim wrote, there is no government interest in perpetuating unlawful agency action. And both the government and we agree DHS's actions here were indefensible. So insofar as— I mean, he committed an aggravated felony, right? So he's—there's a certain category of people who get, you know, more streamlined immigration proceedings because of that. And he—I don't think there's any question that he falls within that, right? Insofar as—oh, yeah. We're not contesting the aggravated felony or bringing a challenge to that conviction. However, we do outline in our supplemental briefing there was a plausible pathway for him to receive relief either through discretionary placement outside of expedited proceedings or through an adjustment of status, both of which were foreclosed by DHS's actions. So to the extent we must show prejudice, we can. However, for the regulatory violations, the denial of the 10 days to respond to the notice of intent, and the lack of provision of the list of legal services, those are clearly—in RIAVACA, clearly established to not require a prejudice showing. Fundamentally, these challenges are also timely. We'd like to note that government has waived timeliness. We also would like to point out that you cannot challenge the final order of removal in front of the IJ. It must be brought to this court, as 1252 makes clear. And these claims were never waived. The government did say that they may withdraw that challenge or the waiver of the challenge to the timeliness. How do you respond to that? Your Honor, Navarrete contemplated a petitioner doing just like what we're doing. They asked Navarrete's counsel at oral argument, do you have any challenges to the final order of removal? And only because Navarrete conceded that any challenge he could bring would be frivolous, did the court rule that there was no jurisdiction in that case. But there's a timeliness issue, right? The government waived timeliness, but it's told us today we may undo or retract that waiver of that position. Your Honor, ultimately, this court has the authority under 28 U.S.C. 1653, under FRCP Rule 15, to allow our petitioner to amend his claim to bring these challenges. What happens if the government says, okay, you've done that, but now we are invoking our rights under Riley. We didn't do that before because we just didn't think we should, but now we're going to. We're going to invoke the timeliness component of Riley? Yeah. We submit that the government has conclusively waived both in their answering brief and in their supplemental briefing. You're saying they can't retract their waiver at this point? I think that retracting their waiver at this point would be extremely unfair, given that, as you noted before, we're responding to case law that's shifting underneath our feet, and we're raising these challenges at the earliest possible time after Navarrete made clear to our client that these are mandatory challenges. Again, the government has no substantive response to these challenges, and at the very least, they must be found to be colorable. And once these challenges are colorable, we then walk through the doorway that Navarrete left open, allowing our client to receive review in this court of his CAT proceedings. And as, Your Honors, all three of you made clear in responding to the government, the BIA egregiously erred in denying our client reopening. All he must show is a prima facie eligibility. All he must show is a reasonable likelihood that were his case to be reopened, he would meet relief. And as you noted, the Greenlight order meets that threshold. The government's response is simply that, you know, the order existed prior, which is a Chenery violation. As government conceded, the BIA did not say that in their order. They did not make the argument the government's making now. So just like the DHS violations, the BIA's conduct is similarly indefensible here. I'd like to close by just reiterating what we're asking for.  Oh, yes. You said that it was unfair for the government to reverse its waiver of the timeliness issue. Can they do it? You said it's unfair, but can you elaborate on that? Your Honor, the government has waived timeliness in this case. And in other cases, our understanding is in order to raise the Navarrete issue, in order to get to this jurisdictional question. Insofar as we have now responded to the jurisdictional question, it does seem like it would needlessly unwind things for the government to then try to raise a separate timeliness issue when they've already allowed us this case to proceed, as they noted in both their answering brief and their supplemental brief. I'd just like to close by clarifying what we're sort of asking for here. This Court, under Navarrete, has jurisdiction over the BIA's denial. And we submit that this Court should remand to the BIA either with instructions to reopen or with instructions to apply the correct law to the correct facts, as you three noted. However, at the same time, we submit that, as Riley instructs, this Court can hold the petition for review as to the far-out challenges in abeyance until the conclusion of reasonable fear proceedings in front of the agency. Riley tells us that in order to preserve judicial review, noncitizens should file a PFR challenging their final order of removal, and the Circuit Court should wait until withholding-only proceedings conclude in order to decide them. As you noted and the government noted, it doesn't really make a lot of sense to go all the way back to DHS and rewind three years of work. All our client is asking for is cat relief here. And so insofar as this Court is not deciding to vacate the far-out itself, it should hold these far-out challenges in abeyance because they're culpable. Is that really what Riley meant by that, though? I thought Riley was talking about bringing a placeholder challenge at the time of the far-out to then leave open the possibility of a challenge to the withholding-only claims. But here all that's already happened. Precisely, Your Honor. The purpose of bringing that challenge to the far-out is, as Alito contemplated, to preserve judicial review over challenges to withholding-only proceedings. In our case, although the order may be a little bit different, the substance and the sort of concept is exactly the same. But we're anticipating that in the events that the BIA denies him again or commits legal errors again and our client comes back before this Court, he would still have as Riley contemplates because this Court would hold his culpable far-out challenges in abeyance until the conclusion of reasonable fear proceedings. All right. Thank you so much. Thank you very much. The matter is submitted. And, again, I want to particularly thank counsel for supervising this case. And to both counsel who argued for the excellent presentation has been very helpful. This is a very challenging case to take into the Pomona Project, just the procedural complexity alone is challenging, not to mention the newly created jurisdictional issue with our recent case law in Navarrete. So thank you for your presentation, and thank you to government counsel as well. It's been very helpful. The matter is submitted, and the Court is in recess until this afternoon. Thank you. All rise. This Court stands in recess until 1.30 this afternoon.
judges: NGUYEN, BRESS, Tunheim